UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **WILLIAM TRAHAN** | **CASE NO. 2:22-CV-01690** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ENSCO OFFSHORE L L C ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 35) filed by Defendants, Ensco Offshore LLC ("Ensco"), Renaissance Offshore, LLC ("Renaissance"), and National Oilwell Varco, LP ("NOV") (collectively referred to as "Defendants"). Defendants move to dismiss Plaintiff, William Trahan's claims with prejudice. Also, before the Court is "Plaintiff's Motion to Strike" (Doc. 45) wherein, Plaintiff, through counsel, moves to strike Defendants' Reply because it contains issues and arguments not at issue in Defendants' original Motion for Summary Judgment or their Memorandum in Support. Specifically, Defendants Reply contains a Motion to Strike deposition testimony of Barrett Scoper.

## FACTUAL STATEMENT

On June 19 and 20th of 2019, William Trahan, an employee of NOV, was aboard the Ensco 102, with another NOV employee, Alex Stewart.[1] During this time, Trahan and Stewart were seamen working on the Ensco 102, an offshore drilling rig owned by Ensco

---

[1] Complaint, ¶¶ 8 and 10, Doc. 1 Defendants' exhibit A, Trahan depo. pp. 75-76.

and operated by Renaissance.[2] Trahan was sent to the Ensco 102 to run and maintain vacuum equipment because it was already rigged up.[3]

Upon their arrival on board the Ensco 102, Trahan and Stewart determined that all the NOV equipment was rigged backwards making it impossible to drill.[4] Trahan notified his operations manager for NOV, Chris Monceaux,[5] and Raphael Arneaux (sometimes referred to as the "Company Man" for Renaissance),[6] and explained that the equipment would have to be un-rigged and then re-rigged.[7]

Stewart was assigned to work the night shift from 6:00 p.m. until 6:00 a.m., and Trahan was assigned to work the day shift from 6:00 a.m. until 6:00 p.m.[8] In reality, due to the equipment issue, Trahan worked past his day shift until approximately 11:30 p.m. and started his day shift the following morning (June 20, 2019).Stewart began work on the afternoon of June 19, 2019, then worked his night shift and continued to work and assist Trahan for part of the day shift until 11:30 a.m.[9] When Stewart began his night shift on June 20, 2019, he was notified by the Company Man that he was relieved of his duties by the Company Man.[10]

---

[2] *Id.*
[3] Defendants' exhibit C, Chris Monceaux Deposition, pp. 17-19; Defendants' exhibit B, Alex Stewart Deposition, p. 16:3-6.
[4] Defendants' exhibit A, Trahan depo., p. 22.
[5] *Id.* p. 16.
[6] *Id.* p. 35 Defendants' exhibit B, Alex Stewart depo. p. 9.
[7] *Id.*
[8] Defendants' exhibit A, pp. 89-93.
[9] *Id.* p. 38:1.
[10] Defendants' exhibit B, Stewart depo. pp. 13-14.

Trahan alleges that he suffered injuries to his back while working on board the Ensco 102.[11] On his first day shift, Trahan claims he had no pain in his back,[12] and on the second day shift (June 20, 2019), Trahan claims he had no pain when he started the shift. About an hour into this shift, at 7:00 a.m., Trahan claims that he began to notice pain between his shoulder blades, but he continued to work with the pain for an additional two hours.[13] By 9:30 a.m., Trahan complains that he was in such pain he could hardly walk.[14] Trahan testified that "nothing drastic happened,"[15] and he could not say what exactly caused his alleged injuries."[16] Trahan then exercised his "stop work authority" to cease working and go to the medic aboard the Ensco 102.[17] Trahan was later transported via a crew boat to Fourchon, Louisiana, then by truck to All Industrial Medical Services in Houma Louisiana.[18]

## MOTION TO STRIKE

In their Reply to the subject Motion for Summary Judgment, Defendants move to strike the lay witness testimony of Barrett Scoper. Defendants inform the Court that Mr. Scoper "voluntarily came forward to give testimony after he saw Plaintiff at the Funeral of Plaintiff's mother-in-law, who Defendants allege also happens to be Scoper's cousin. According to Scoper's testimony, he is not Trahan's cousin; but his partner is related to

---

[11] *Id.* ¶ 23; Defendants' exhibit A, William Trahan Deposition, p. 122.
[12] Defendants' exhibit A, Trahan Depo. p. 59.
[13] Complaint, ¶ 23, Doc. 1.
[14] Defendants' exhibit A, Trahan Dep., p. 99:10-18.
[15] *Id.* p. 113:4.
[16] *Id.* p. 99:2-4.
[17] Defendants' exhibit A, Trahan Depo., p. 100.
[18] *Id.*, p. 101.

Trahan.[19] At that time Plaintiff asked Scoper, "Will you give a deposition for my attorney?"[20]

Plaintiff noticed Scoper's deposition two weeks later. Defendants complain that Scoper's testimony is biased, contradictory to Plaintiff's testimony as well as his own, unsupported, inappropriate "expert" opinion, and inadmissible hearsay.[21]

In their Motion to Strike, Plaintiff moves to strike any portions of Defendants' Reply that contains new arguments including the Motion to Strike Barrett Scoper. Defendants argue that Plaintiff's use of Scoper's testimony as an expert runs afoul of Federal Rule of Civil Procedure 26(a)(2)(B). Rule 26(a)(2)(b) states that the disclosure of an expert witness that a party may use at trial to present an expert opinion, "must be accompanied by a written report," that must include (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them." Rule 37(b)(1)(A)(ii) states that the court may prohibit "the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matter in evidence." Defendants assert the Mr. Scoper was not identified as an expert and the time for doing so has now lapsed. Defendants argue that Plaintiff is attempting to proffer an expert in lay witness clothing.

Specifically, Defendants complaint that Scoper testified as to "how Plaintiff was injured," and that he knows Plaintiff "jumped" and "jarred" his back while climbing a

---

[19] Plaintiff's exhibit C, Barrett Scoper deposition, p. 31.
[20] *Id.* Scoper depo, p. 28-29.
[21] Reply, pp. 1-2, Doc. 44.

ladder.[22] Defendants argue that Plaintiff has no foundation to offer this testimony and it should be struck.

Additionally, Defendants argue that Scoper cannot testify as to the industry standards for vacuuming personnel and jobs, the thoughts and impressions of Mr. Arneaux, and the psychology, thoughts, and impressions[23] of Plaintiff. Defendants ask the Court to not consider this portion of Scoper's testimony to defeat summary judgment.

Other portions of Scoper's testimony that Defendants move to strike include Scoper's testimony as to how many men should have lifted the PVC pipe and testimony on NOV equipment because Scoper is not an expert in the field. Defendants move to strike all hearsay statements by Scoper and all contradictory statements.

In response, Plaintiff moves to strike Defendants' Reply because its Motion to Strike Scoper was not in the original Motion for Summary Judgment and thus, it is a new argument that Plaintiff suggests this Court cannot consider.  The Court disagrees.  Because Plaintiff relied on Scoper's deposition testimony, Defendants have every right to challenge that testimony as they have done so in their Reply.

The Court agrees with Defendants that any testimony by Scoper that is (1) an attempt to provide causation, (2) hearsay, (3) industry standards for vacuuming personnel, (iii) Mr. Arneaux's thoughts and impressions, and (iv) Plaintiff's psychology, thoughts, and impressions should not be considered by the Court in addressing the instant Motion for

---

[22] Plaintiff's exhibit C, Scoper Depo. pp. 14 and 22.
[23] Scoper testified that Plaintiff was killing himself, working urgently, working diligently, doing the best he could [Scoper Depo. pp. 13-14, 57], and he was being a hard ass or whatnot [*Id.* p. 60] by refusing to get help from the roustabouts.

Summary Judgment, nor will it be allowed at the trial of this matter. As to alleged contradictory statements as to Scoper's observations only, the Court will allow this testimony at trial, considering that Defendants can certainly cross-examine Scoper and use Scoper's alleged contradictory statements for impeachment purposes. As such, the Motion to Strike by Defendants will be granted in part and denied in part and the Motion to Strike the Reply filed by Plaintiff will be denied.

### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

In this lawsuit, Plaintiff has asserted a Jones Act negligence claim and unseaworthiness of the Ensco 102. Trahan's complaints of Jones Act negligence and/or unseaworthiness are as follows:

- Prior to his arrival onboard the Ensco 102, NOV personnel from the prior hitch, rigged part of the 150 hp vacuum pump in reverse requiring it to be unrigged and re-rigged;

- On his arrival—June 19, 2020, two 30 hp vacs needing rigging;

- On his arrival vacuum equipment needed to be located and released due to a few leaks;

- On June 20, 2019, a power outage occurred on the vessel, causing one or more of the switches to trip, temporarily shutting down drilling operations;

- The power outage resulted in mud backflowing and spilling on the drilling floor;

- The backflow of mud caused 25 to 30 feet of 6" hose to kink in two places making it necessary to replace the hose with a 6" hard PVC pipe;

- On June 20, 2019, Trahan had to perform this work by himself.

*Jones Act negligence*

The Jones Act, 46 U.S.C. § 688, allows an injured seaman to bring an action against his employer for negligence. *Becker v. Tidewater*, 335 F.3d 376, 386 (5th Cir. 2003). The Jones Act employer's potential liability extends to all personal injuries arising during the course of the seaman's employment. Proof of negligence is essential to recovery. Such negligence may arise in many ways including the failure to use reasonable care to provide a seaman with a reasonably safe place to work, the existence of a dangerous condition on or about the vessel, failure to inspect the vessel for hazards, failure to take precautions to protect a seaman, or any other breach of the duty of care. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1977) *overruled on other grounds*, by *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997); Thomas J. Schoenbaum, Admiralty and Maritime Law, § 6–21 (4th ed.2004).

"A seaman is entitled to recovery under the Jones Act … if his employer's negligence is the cause, in whole or in part, of his injury," *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely, the duty to take reasonable care under the circumstances. *Gautreaux*, 107 F.3d at 338–39. "While a Jones Act employer's duty to provide a safe place for the seaman to work is a broad one, the employer must have notice and opportunity to correct an unsafe condition before liability attaches." *Colbum v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989) (citations omitted).

The cause of action under the Jones Act arises when this duty is breached, and the employer's breach of duty is the "legal cause" of the seaman's injury. *Gavagan v. United States*, 955 F.2d 1016, 1020 (5th Cir.1992). General maritime law places upon a vessel owner a non-delegable duty to provide a seaman with a vessel reasonably fit for its intended use. See *Marceaux v. Conoco, Inc.*, 124 F.3d 730, 734 (5th Cir. 1997).

The burden on the plaintiff to prove proximate cause in actions based on the Jones Act and general maritime law is very light. Indeed, the most noted commentators in the field have called it 'featherweight.' *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir.1975). The test on the issue of causation is whether the evidence shows that employer negligence played any part, even the slightest, in producing the injury for which damages are sought. See *Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 664 (9th Cir.1997). This test, often described as a featherweight causation standard, allows a seaman to survive summary judgment by presenting even the slightest proof of causation. *See id*.

"A defendant must bear responsibility for his negligence if his negligence played any part, even the slightest, in producing the injury" for which damages are sought. *Landry v. Oceanic Contractors, Inc.*, 731 F.2d 299, 302 (5th Cir. 1984) citing *Chisholm v. Sabine Towing and Transportation Co.*, 679 F.2d 60, 62 (5th Cir. 1982); *In re Cooper/T. Smith*, 929 F.2d 1073, 1076–77 (5th Cir. 1991).

A seaman must act with ordinary prudence under the circumstances thus, comparative fault may reduce recovery. *Gautreaux*, 107 F.3d at 339; *Jauch v. Nautical Serv., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006), citing *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir. 1989). A seaman's comparative fault will not necessarily bar his recovery, but it

may reduce the amount of damages owed proportionate to his share of fault. *Id*. The defendant has the burden of proving a seaman was guilty of comparative negligence. Comparative negligence applies in both Jones Act and unseaworthiness actions. *Thibodeaux v. Ensco Offshore Co.*, 300 F.Supp.3d 792, 801–02 (W.D. La. 2017).

Defendants maintain that Plaintiff cannot prove negligence by the Defendants. Defendants argue that Trahan's actions alone caused his injury and none of the alleged unseaworthy conditions or negligence on the part of NOV, Renaissance, or Ensco could have harmed Trahan without his negligent actions. Therefore, Defendants argue that because Trahan was the sole cause of his injury, his claims should be dismissed. Defendants contend Plaintiff is at fault for the alleged back injury because he did not ask for help from the roustabouts and deckhands, which he clearly knew was an option.[24]

Defendants rely on *Breeland v. Falcon Drilling Co., Inc.*, 733 So.2d 1217, 1218-19 (La. App. 3 Cir. 1999) wherein the plaintiff did not wait for help to flip a 350-pound plate causing injury to his neck. Plaintiff sued his employer for Jones Act negligence and unseaworthiness and the court of appeal upheld a judgment in the employer's favor based on its conclusion that the plaintiff's negligent action of lifting an object he knew required assistance was the sole and proximate cause of his injury. In *Breeland*, the plaintiff asked for assistance; plaintiff's request was granted but he did not wait for that assistance to arrive.

---

[24] Defendant's exhibit D, Rayville Arceneaux Deposition, pp. 19, 33, 37, 39, 46, 49-50,52,32:10-25, 52:1-8, 67:5-19.

Plaintiff asserts that in *Breeland* there was a credibility issue because plaintiff worked his seven-day hitch and two other seven-day hitches before seeking medical attention. Also, it was Plaintiff's decision to turn the plate on his own after being informed by the rig manager that he would supply extra help to turn the plate. However, when that help did not arrive timely, Breeland took it upon himself to turn the plate. The Court agrees with Plaintiff, that the circumstances in *Breeland* are quite different than in this matter.

Here, Trahan did not ask for help, nor did his supervisor advise him he should wait for help. Additionally, there were rigging problems over a two-day period such as vacuum leaks, electrical issues, shaker shutdowns, and hose replacement. The Court notes that Plaintiff did seek and receive assistance from his co-worker, Stewart, until Stewart was physically unable to assist due to sleep deprivation. The Court finds that there are genuine issues of material fact for trial as to any negligence by Defendants, and whether or not Plaintiff should have sought more help.

*Unseaworthiness*

Mr. Trahan bears the burden of proving that the *ENSCO 102* was unseaworthy and not reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, (1960), citing *Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 75 S.Ct. 382 (1955). See also *Liner v. J.B. Talley and Co., Inc.*, 618 F.2d 327, 330 (5th Cir. 1980); *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001); *Phillips v. Western Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992). Although the duty of

seaworthiness is absolute and does not require negligence, the mere fact an accident occurred does not establish unseaworthiness. *Aycock v. Ensco Offshore Co.*, 833 So.2d 1246, 1250, p. 4 (La. App. 3 Cir. 12/18/02).

This duty can be breached, and a vessel rendered unseaworthy by an inadequately manned crew due to insufficient manning or an incompetent crew. *Orient Mid-E. Lines, Inc. v. Shipment of Rice on Bd. S.S. Orient Transporter*, 496 F.2d 1032, 1040 (5th Cir.1974). However, generally whether an employer supplied a sufficient crew to accomplish a task is a question of fact for a jury. *Little v. Green*, 428 F.2d 1061, 1066 (5th Cir.1970).

If proven, Trahan would then have to establish "that the unseaworthy condition was the proximate cause of his injury." *Id*. (Citations omitted). That is, he must establish his injury was either a direct result of or a reasonably probable consequence of unseaworthiness. *Phillips v. Western Co. of North America*, 953 F.2d 923, 928 (5th Cir. 1992). "If the unseaworthy condition is created simultaneously with the injury, liability does not attach to the owner." *Freimanis*, 654 F.2d at 1163 n. 7.

Although negligence and unseaworthiness are totally separate concepts, the same factual basis has been used to assert both theories of recovery. *Cabahug v. Text Shipping Co.*, (La. App. 1 Cir. 5/12/00), 760 So.2d 1243, 1251, *writ denied*, 773 So.2d 145 (La.11/3/00).

Here, it appears there were several problematic issues going on at the same time. Plaintiff has submitted summary judgment evidence that the crew was understaffed, supported by the fact that a four-man crew replaced Plaintiff's two-man crew and that

Plaintiff had been informed that the job was a four-man job.[25] An understaffed crew is a cause of unseaworthiness. See *Marceaux*, 124 F.3d at 734. It also appears that the previous crew had not set up the NOV rigging correctly, which prompted much of the chaos involving the vacuum system. The Court finds that Plaintiff has submitted sufficient summary judgment evidence to create a genuine issue for trial as to unseaworthiness on the part of the Defendants.

## CONCLUSION

For the reasons explained herein, the Court will deny the Motion for Summary Judgment" (Doc. 35) filed by Defendants, Ensco Offshore LLC, Renaissance Offshore, LLC, and National Oilwell Varco, LP the Court will grant Defendants' Motion to Strike in part, and deny it in part as noted herein, and the Court will deny Plaintiff's Motion to Strike Defendants' Reply Memorandum.

**THUS DONE AND SIGNED** in Chambers on this 15th day of July, 2024.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

---

[25] Plaintiff's exhibit A, Trahan Depo. p. 29.